UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __24-8432-BER__

UNITED STATES OF AMERICA

v.

JOSUE DAVID BALAGUER,

          **Defendant.**
_____/

# CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?  ☐ Yes  ☑ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ☐ Yes  ☑ No

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  ☐ Yes  ☑ No

          Respectfully submitted,

          MARKENZY LAPOINTE
          UNITED STATES ATTORNEY

BY: _____
          DANIEL E. FUNK
          ASSISTANT UNITED STATES ATTORNEY
          Florida Bar No.  0592501
          500 South Australian Avenue, Suite 400
          West Palm Beach, Florida 33401
          Tel:  (305) 905-7509
          Fax:  (561) 820-8777
          Email:  daniel.funk@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JOSUE DAVID BALAGUER,<br><br>*Defendant(s)* | Case No. 24-8432-BER<br><br>FILED BY **TM** D.C.<br>Sep 10, 2024<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - WPB |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **on or between 5/27/24 and 8/29/24** in the counties of **Palm Beach, Broward, and Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 846 | conspiracy to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide) |
| 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B)(vi) | possession with intent to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide) |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Gregory Hoffman, FBI Special Agent
*Printed name and title*

Sworn to me via Telephone-FaceTime by the applicant in accordance with the requirements of Fed. R. Crim. P. 4(d) and 4.1.

Date: _____

Digitally signed by Bruce Reinhart
Date: 2024.09.10 15:33:40 -04'00'

*Judge's signature*

City and state: West Palm Beach, FL          BRUCE E. REINHART, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Gregory Hoffman, being first duly sworn, hereby depose and state as follows:

## AGENT BACKGROUND AND INTRODUCTION

1. The affidavit is submitted support of a criminal complaint charging JOSUE DAVID BALAGUER with one count of conspiracy to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide)), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 846; and one count of possession with intent to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide)), in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B)(vi).

2. As a Special Agent of the FBI so employed since March 2016, I have been assigned to the West Palm Beach Resident Agency, Violent Crime Squad, since August 2016. My duties have included the investigation of several violent criminal offenses and the trafficking of narcotics through both conventional and non-conventional organizational means often coordinated through the internet. Several of these investigations have involved subjects engaged in the sale of narcotics through the dark web in addition to traditional drug organization investigations.

3. I have received training on narcotics trafficking and money laundering from the FBI and have been personally involved in investigations concerning the possession, manufacture, distribution, transportation, and importation of controlled substances both through the dark web and traditional methods, as well as methods used to finance drug transactions and launder drug proceeds. Through investigations and training, I have become familiar with narcotic traffickers' methods of operation including the distribution, storage, and transportation of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering.

These investigations have resulted in arrests of individuals who have smuggled, received, and distributed controlled substances, including, but not limited to, methamphetamine, fentanyl, and other pharmaceuticals, as well as the arrests of individuals who have laundered proceeds emanating from those illegal activities. These investigations have also resulted in seizures of illegal drugs and proceeds from the distribution of those illegal drugs.

4. This affidavit is based on your affiant's personal knowledge and on information provided to your affiant by other law enforcement officers and witnesses. Not all the facts known to me have been included in this affidavit, but only such facts as are necessary to support a finding of probable cause for the issuance of a criminal complaint.

## PROBABLE CAUSE

5. Federal agents are currently investigating individuals mailing controlled substances through the U.S. Postal System (USPS) from the Southern District of Florida and other locations in United States, as part of a larger investigation into the international, web-based, marketing and distribution of controlled substances. Drug trafficking organizations based outside the United States are employing and financially compensating individuals ("re-shippers") in the United States to package and mail parcels containing controlled substances to customers located in the United States. The drug trafficking organizations conduct marketing, take orders, and coordinate the fulfillment of orders, while the re-shippers conduct the physical packaging and shipping of the controlled substances.

**Dark Web Drug Vendor**

6. On May 27, 2024, as part of the investigation into a dark web drug vendor, a covert employee of the FBI conducted an exchange of emails with an email address obtained by investigators from emails previously exchanged with the proton mail account of the dark web drug vendor. The proton mail account had been identified through analysis of data obtained through a

search warrant for a Google Account related to the dark web vendor. The covert employee arranged for the purchase of 100 Oxycodone M30 pills for $330.00 of Bitcoin. In concluding the order, the seller provided a USPS tracking number to the covert employee.

7. On June 4, 2024, the order was received at an undercover location within Palm Beach County, in the Southern District of Florida. The parcel contained the purported Oxycodone pills, which were submitted to the DEA Southeast Laboratory for chemical testing and returned a positive result for N-Pyrrolidino Protonitazene which is a controlled substance analogue.[1] A review of USPS records indicated that the parcel was mailed on May 29, 2024, from the USPS Post Office at 9704 N.W. 17th Street, Doral, Florida 33172. A camera within the facility captured the following image of the mailer:



8. Josue BALAGUER, a/k/a Josue David BALAGUER Medina, (hereinafter BALAGUER) was developed as a suspect during the investigation. Agents obtained Josue BALAGUER's Florida Driver's License photograph from the DHSMV DAVID system. The photograph is below.

---

[1] An expert with the Drug Enforcement Administration, Diversion Control Division, Drug and Chemical Evaluation Section, in a written communication, stated that they can support N-Pyrrolidino Protonitazene as controlled substance analogue.



9.      During the investigation, agents obtained a warrant to track BALAGUER's Dodge Charger from the Honorable Judge William Matthewman (SDFL Warrant 24-mj-8371-WM). On August 14, 2024, BALAGUER'S Charger departed 2539 Liberty Street and went to 2318 Scott Street, Hollywood, Florida, at approximately 2:32 p.m. before proceeding to I-95 northbound at approximately 3:00 p.m. The vehicle stopped at three USPS post offices, including one located at 170 NE Second Street, Boca Raton, Florida. USPS facility cameras from inside the Boca Raton post office captured BALAGUER depositing twenty-one USPS priority flat envelopes into a USPS blue collection bin. After depositing the parcels, BALAGUER drove away from the USPS facility. The parcels were removed from the blue collection bin and secured by USPS employees.

10.     USPIS personnel seized the 21 parcels and later opened them pursuant to a federal search warrant issued by the Honorable Judge Ryon M. McCabe (SDFL Warrant 24-mj-8391-RMM). Within the 21 parcels, agents recovered numerous pills packaged in vacuum sealed plastic which is consistent with illegal drug distribution. Results from the DEA Southeast Laboratory indicate that multiple types of pills found in the parcels contained fentanyl and heroin. In particular, one plastic bag of pills contained 44.83 grams ($\pm$ 0.01g) of pills containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide). The following list includes a description of the appearance of the pressed pills, the purported type of pharmaceutical, and the total weight of the drugs found in the parcels (including the packaging weight):

4

a. In 4 parcels, 309.6 grams of oblong yellow pills marked "E712." This pill bears the markings, color, size, and shape of Endocet, a Schedule II controlled substance;

b. In 2 parcels, 25.6 grams of triangular white pills marked "p|d" and "8." This pill bears the markings, color, size, and shape of Hydromorphone, a Schedule II controlled substance;

c. In one parcel, 42 grams of light blue pills marked "K25." This pill bears the markings, size, and shape of phentermine, a Schedule IV controlled substance. However, this pill differs from the color of phentermine in that it is light blue instead of white with blue specks. Your affiant believes, through training and experience, that this may be an artifact of the counterfeiting process;

d. In 6 parcels, 91.6 grams of round blue pills marked "M/30." This pill bears the markings, color, size, and shape of Oxycodone, a Schedule II controlled substance;

e. In 4 parcels, 271.4 grams of oblong white pills marked "M367." This pill bears the markings, color, size, and shape of Acetaminophen and Hydrocodone Bitartrate, a Schedule II controlled substance;

f. In one parcel, 38.0 grams of oblong yellow pills marked "WATSON 853." This pill bears the markings, color, size, and shape of Acetaminophen and Hydrocodone Bitartrate, a Schedule II controlled substance;

g. In one parcel, 23.2 grams of round green pills marked "OP/80." This pill bears the markings, color, size, and shape of Oxycontin, a schedule II controlled substance; and

h. In one parcel, 33.2 grams of branded Belbien blister packs, a Schedule IV controlled substance.

**August 29, 2024 – Mailing at USPS 7972 Pines Blvd., Pembroke Pines, Florida**

11. On or about August 22, 2024, an FBI covert employee messaged the drug vendor on the Telegram messenger application. Over the next few days, the FBI covert employee arranged for the purchase of 100 Adderall Pills, 300 "Citra" Tramadol pills, and 20 Belbien pills. These pharmaceuticals are controlled substances scheduled under the Controlled Substances Act. The drug vendor previously provided a Bitcoin wallet address for the covert employee to send funds to and provided the USPS tracking number.

12. Based on tracking information, on August 29, 2024, BALAGUER'S Charger departed a residential area and proceeded to a USPS Post Office at 2350 N. University Dr. Pembroke Pines, Florida, and arrived at approximately 5:29 p.m. where it remained until 5:38 p.m. The vehicle then proceeded to a USPS Post Office at 7972 Pines Blvd., Pembroke Pines, Florida, before departing ten minutes later. Shortly after BALAGUER's departure, the parcels he mailed were recovered by an employee at the USPS facility.

13. On August 30, 2024, USPIS Inspectors went to the Pines Blvd. U.S. Post Office location and seized the eighteen (18) parcels (SUBJECT PARCELS), and an additional parcel bearing the tracker number provided by @AKgenerics to the FBI covert employee on or about August 22, 2024. Within the covert employee's parcel, agents recovered approximately 127.8 grams of pressed pills matching the description of the pills purchased by the covert employee on or about August 22, 2024. Chemical testing of the pills purchased by the cover employee is pending. A review of camera footage from within the facility determined that the parcels were entered into the mail by a person matching the physical description of BALAGUER.[2]

---

[2] The tracker reading when BALAGUER'S Charger arrived at the post office is approximately ten minutes different than the time reading on the surveillance camera when BALAGUER appears to be inside of the USPS facility. Currently, agents believe this is due to a clock error with the surveillance cameras at the USPS facility.

14. On or about September 3, 2024, the SUBJECT PARCELS were individually placed in an open-air setting among similar sized parcels lined up on the floor at a USPS facility located at 3200 Summit Boulevard, West Palm Beach, Florida, 33416. All parcels were examined by a narcotics-trained canine named "Wall-E," who alerted to the parcels for the presence of narcotics. Palm Beach County Sheriff's Office (PBSO) Deputy Cesar Tejada and "Wall-E" have trained and worked as a team for approximately three years. "Wall-E" has successfully completed 420 hours of Narcotics Detection Courses, and is certified in the detection of cocaine, heroin, methamphetamine and ecstasy as well as derivatives. "Wall-E" is certified on a yearly basis.

15. A warrant was obtained from the Honorable Judge William Matthewman (24-mj-8414-WM) to open the parcels and the search warrant was executed on September 10, 2024. The parcels contained what appeared to be controlled pharmaceutical pills vacuum sealed in plastic bags of a type known by your affiant to be used by drug traffickers and previously observed by your affiant during this investigation. The types of the pills included 248.8 grams of oval/oblong yellow pills marked "WATSON 853," 73.2 grams of round orange pills marked "dp" and "30," 151 grams of round orange pills marked "AD" and "30," 126.8 grams of round orange pills marked "b974" and "30," and 139.2 grams of white oval pills marked "M523" and "10/325." These weights included the plastic bags the pills were packaged in. Your affiant also observed chalking/flaking in some of the pill bags which indicative of the pills being counterfeited in a non-professional setting.

16. The yellow pills marked "WATSON 853" are consistent in appearance (size, shape, and color) with Acetaminophen and Hydrocodone Bitrate which is a Schedule II controlled substance. The orange pills marked "dp" and "30" are consistent in appearance with Adderall, which is a Schedule II controlled substance. The orange pills marked "AD" and "30" are consistent in appearance with Adderall, which is a Schedule II controlled substance. The orange pills marked

7

"b974" and "30" are consistent in appearance with Amphetamine and Dextroamphetamine (Adderall's generic), which is a Schedule II controlled substance. The white pills marked "M523" and "10/325" are consistent in appearance with Acetaminophen and Oxycodone Hydrochloride, which is a Schedule II controlled substance. These items will be submitted to the DEA Southeast Laboratory for testing.

## CONCLUSION

17. Based on the foregoing, your affiant respectfully submits that there is probable cause to believe JOSUE DAVID BALAGUER has committed the criminal offenses of conspiracy to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 846; and possession with intent to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl), in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B)(vi).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Gregory Hoffman
Special Agent
Federal Bureau of Investigation

Sworn and attested to me by applicant by
telephone (Facetime) per the requirements
of Fed.R.Crim.P. 4(d) and 4.1. on September _____, 2024.

_____
Digitally signed by Bruce Reinhart
Date: 2024.09.10 15:34:00 -04'00'

BRUCE E. REINHART
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   JOSUE DAVID BALAGUER

**Case No**:   24-8432-BER

**Count #1:**

Conspiracy to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 846

* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years
* **Max. Supervised Release:** 4 years up to life
* **Max. Fine:** $5,000,000

**Count #2:**

Possession with intent to distribute a controlled substance (40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide), in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B)(vi).

* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years
* **Max. Supervised Release:** 4 years up to life
* **Max. Fine:** $5,000,000

\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.